**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FILED

DEC 0 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| Godfrey D Henneghan | * | |
| 5814 Clay Street N.E. | * | |
| Washington, D.C. 20019 | * | |
| 202-398-2484 | * | |
| **Plaintiff(s)** | * | Case: 1:07-cv-02173 |
| vs. | * | Assigned To : Kennedy, Henry H. |
| | * | Assign. Date : 12/03/2007 |
| District of Columbia Public Schools | * | Description: Civil Rights-Non. Employ. |
| 825 North Capitol Street, N.E. | * | |
| Washington, D.C. 20002-4232 | * | |
| | * | |
| **Defendant(s)** | * | |

JURY ACTION

## COMPLAINT

1.      This is a civil action arising out of discrimination and retaliation by Defendant District of Columbia Public Schools ("DCPS") on the basis of disability in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504) and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("the ADA) for failing to provide a Free and Appropriate Public Education (FAPE) to the son of Plaintiff Godfrey D Henneghan ("Henneghan") who is a 13 year old child named Malcolm Henneghan who is a student enrolled at Defendant DCPS school system as a learning disabled student.  This action is brought under Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act, Title IV of the Civil Rights Act of 1964 and the Equal Educational Opportunities Act of 1974 and Title VII of the Civil Rights Act of 1964 with respect to Plaintiff Henneghan child Malcolm Henneghan who is a student in a public educational institution.

## PARTIES

2.      Plaintiff Godfrey D Henneghan ("Henneghan) is a resident, parent and citizen of the District of Columbia.  Henneghan son Malcolm Henneghan born and raised in the District of Columbia who is a student in the Public School System of the District of Columbia a public institution of Defendant (DCPS).  Plaintiff Henneghan son Malcolm Henneghan is a learning disable student with disabilities in speech, reading, math and written expression.  Plaintiff Henneghan son Malcolm Henneghan during the course of his education has always been listed as

RECEIVED

NOV 1 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

learning disable with disabilities in speech, reading, math and written expression during his enrollment in Defendant (DCPS) public institution. Plaintiff Henneghan son is now in the 8th grade attending Kelly Miller Middle School located at 301 49th Street, N.E., Washington D.C. 20019 which is a public institution and a school of Defendant (DCPS).

3.      Defendant "District of Columbia Public Schools" ("DCPS") located at 825 North Capitol Street, N.E., Washington D.C. 20002 is a public institution of the District of Columbia pursuant to the laws of the District of Columbia, with public schools located in the District of Columbia. Defendant DCPS is a public institution within the meaning of Section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act and The Individuals with Disabilities Education Act (IDEA).

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over Plaintiff Henneghan's claims pursuant to 28 U.S.C. § 1331 and pursuant to 42 U.S.C. § 1331 and pursuant to 42 U.S.C. § 2000e-5(f) (3). The Plaintiff also seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5.      The parties are of diverse citizenship, and the amount in controversy in this action exceeds the sum of $50,000.00 exclusive of the interest and costs. This Court has jurisdiction over Plaintiff Henneghan's claims under the District of Columbia common law pursuant to the doctrine of pendent jurisdiction.

6.      Defendant DCPS is subject to the personal jurisdiction of this Court.

7.      The unlawful public institution practices complained of were committed in this judicial district and Plaintiff Henneghan son Malcolm Henneghan attends school in this judicial district, during the course of Defendants DCPS unlawful actions. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f) (3).

8.      Defendant DCPS resides in this judicial district within the meaning of 28 U.S.C. § 1391, and a substantial part of the events or omissions giving rise to this claim occurred in this district. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## BACKGROUND

9.      On August 26, 2004, I (Godfrey D. Henneghan) met with the District of Columbia Public Schools Multidisciplinary Team at Burrville Elementary located at 801 Division Avenue, N.E., Washington, D.C. The reason for this meeting was to address my concerns that the faculty

2

and staff at Burrville Elementary removed my child, (Malcolm Henneghan) out of Special Ed without my knowledge.

10.     The Multidisciplinary Team made recommendations and an Individualized Education (IEP) Program was created. The (IEP) required 15 hours per week for Math, Reading, and Written Expression and 1 hour per week for Speech and Language Therapy. That's 16 hours of Special Ed services per week.

11.     On August 26, 2004, while meeting with the Multidisciplinary Team I received a DCPS – IEP (My Child's Individualized Educational Program). On his IEP all of the IEP Team participants in the development of the IEP introduced themselves and agreed to the information contained in the IEP. I introduced myself (Godfrey D. Henneghan), the School Psychologist introduced himself to me via telephone conference, the Special Education Teacher introduced herself, the Social Worker introduced herself, and the Speech Pathologist introduced herself. All of the above mention professionals were their and agreed to the content of the IEP. I received a copy of everyone's signature that introduced themselves and who agreed to the contents of my child's IEP.

12.     On September 20, 2004, I received the official copy of my child's IEP with the Principle, Donnie Rutledge name and signature inserted squeezed) illegally onto the IEP as if he attended and agreed to the IEP. Additionally, an insertion of data was added to the said IEP reflecting 49 percent of the time NOT in a Regular Education Setting.

13.     On October, 13, 2004 (5 weeks after school started) I wrote a letter to my child's (Malcolm Henneghan) teacher stating the following:

14.     "Dear Ms. Clark:, My child Malcolm Henneghan is a Learning Disabled student. Malcolm requires specialized instruction in Math, Reading and Written Expression. On August 26, 2004 (a week before school started), I met and or spoke with Anthony White School Psychologist, Edith E Ajaero, Special Ed. Teacher, Vanessa Countee, Social Worker, Leslie J Charles, Speech Pathologist, and Carvella Giles, General Education Teacher.

15.     I was informed orally and in writing that Malcolm requires and will receive 15 hours per week of special instruction in Math, Reading, and Written Expression and 1 hour per week Speech and Language Therapy. Additionally, Malcolm requires preferential seating, small groups, repeated/restated directions, extended time, and frequent breaks. At this point, Malcolm should have received over 100 hours of the above mention subjects.

3

16.    I am concerned that my child disabilities are not being address according to what was told and given to me by the above noted people. I am concerned about the level and length of the homework assignments. I am gravely concerned that my child is not getting 15 hours of specialized instructions per week.

17.    I would like to meet with you at your earliest convenience to address my concerns."

18.    During the week of October 13, 2004, I met with Ms. N. Clark (my child's 5th grade teacher) regarding the above mention letter. During our meeting, I echoed what the IEP stated with respects to specialized instruction in Math, Reading and Written Expression and Speech and Language Therapy. I also asked Ms. N. Clark if she read my child's IEP? She said yes. She also mentioned that she was helping Malcolm using phonics. I informed her that without complying with my child's IEP, Malcolm is unable to learn in an environment that's not situated for a learning disabled child. Ms. Clark suggested that I talk to the Principle and Speical Education Teacher regarding my child's IEP.

19.    After meeting with my child's teacher, I left her class feeling like she will not adhere to the IEP designed for my son. Before leaving the school the Principal, Donnie Rutledge, met with me in his office regarding the before mentioned letter to my child's teacher dated Wednesday, October 13, 2004. Mr. Rutledge told me that he read my letter to Ms. Clark and that we need to have a meeting to give me a clear definition of what's in my child's IEP. My response to Mr. Rutledge was that I have a very good understanding of my child's IEP and that my son requires 16 hours a week of Special Education for 13 months. Mr. Rutledge stated "how does Special Ed. know it will take 13 months of special education services to help my child"? I told Mr. Rutledge that it was stated in my child's IEP what was required. I also mentioned to Mr. Rutledge that I was their at the Multidisciplinary Team meeting and met with everyone their and discussed my child's needs with respect to his disabilities. The Multidisciplinary Team came to the conclusion and agreed that my child required Special Education services. The Multidisciplinary Team assured me, that those services would start the beginning of the 2004 – 2005 school year (September 1, 2004). The reason for meeting with the Multidisciplinary Team a week before the 2004 –2005 school season started was due to my written complaints to Burville Elementary for taking my child out of Special Education the entire school year of 2003-2004 without my knowledge. As a result of Burrville elementary gross negligence, my child had

4

to survive the entire 4th grade without Special Education service thus making it impossible for him to learn anything without those required services.

     20.     On December 7, 2004, I sent a letter to my child's teacher Ms. Clark regarding the Parent Teacher's Conference for the 1st Advisory. My letter states; "Dear Ms. Clark:, I am very sorry I could not make the Parent Teacher's Conference last Friday, December 3, 2004. If you could, please make arrangements with his Special Education teachers so that we can all meet together. If you have any question or concerns, please call me at 202-396-8701."

     21.     On December 16, 2004, I received my letter back from Ms. Clark with a note written on top of it stating. "I left a copy of this letter in Ms. Ajaero's(Special Education Teacher) mailbox. As soon as she tells me what day/time is good for her, I'll be in touch."

     22.     The next time I heard from my child's Teacher Ms. Clark or anyone from Burrville Elementary was when I sent another letter to Ms. Clark stating the following:, "January 6, 2005, Ms. Clark, 5th Grade, Burrville Elementary School Washington, D.C. 20019, Dear Ms Clark:, The math homework you gave to my child Malcolm Henneghan was way over his head. He could not do one problem. My child is learning disable and Burrville is not in full compliance with his IEP. My child requires 16 hours per week for special education. It is my opinion that the faculty and staff at Burrville Elementary have been willingly and unlawfully discriminating against my child by not complying with his IEP. There are no sliding doors or ramps at Burrville Elementary and thus preventing my child to a fair and equal education.

     23.     By not complying with the IEP, my child is unable to learn and receive a fair education. As his parent, I can say with all honesty that my child has not learned one thing in your class this year. My goal is to seek justice in this matter. Because of Burrville's unlawful actions, my child is not receiving a fair and equal education. There are about 30 school hours per week and my child requires 16 hours per week special education. That's more than 50 percent of his learning. If he is not receiving special education 60 percent of the time he's at school. Then Burrville Elementary is not complying with the IEP and therefore blatantly discrimination against my learning disable child."

     24.     I received a letter from Ms. Clark dated January 6, 2005 stating the following:, "January 6, 2005, Dear Mr. Henneghan, I received your letter concerning Malcolm's math homework. I am writing to explain to you what happened on Tuesday in class. Malcolm was in class when I started the lesson on long division. Ms Ajaero came to get him approximately one-

5

third of the way through the lesson to help him with his science fair project. Malcolm, therefore, was not in class for the entire lesson. At the end of the day, when Malcolm was copying his homework I specifically asked him if he understood the math from theis morning. Since he was not in class for the entire lesson, I was expecting him to say that assignment like I usually do if he is not prepared to practice a skill on his own. What Malcolm told me was that he did understand how to do long division like we were doing that morning. I asked him a second time if he was sure that he understood how to do it and he replied a second time that he did. I then assigned him the first twelve problems to do. That is how Malcolm had math homework assigned to him that he did not know how to do. I forwarded copies of your letter to Mr. Rutledge and Ms. Ajaero. They will have to address your concerns about the number of hours of special education instruction that he receiving."

25.    During the week of January 20th 2005, the 5th graders at Burrville Elementary performed a play. My child was a participant in that play. The play originally started at 9:00am. A party of 4 myself included was going to see my child in the play. The morning before school opened, the weather forecast called for a snowstorm during the day. My mother (one of the party of 4) called Burrville Elementary at 8:30am to confirm the time of the Play because of the weather forecast. The school secretary cnfirmed that the Play will be changed from 9:00am to 1:00pm. My mother also asked me to called the school again to confirm that it will be held at 1:00pm. I called Burrville Elementary around 8:55am to confirm what my Mother was told. The secretary asked me to hold on the telephone. When she returned to our telephone call as I was on hold, she said "Mr. Rutledge said that the Play will be held at 1:00pm.

26.    At 9:55am, I received a call from the school secretary at Burrville Elementary. She said that the Play will start at 10:00am. I had 5 min. to get to Burrville and see the Play. I arrived at Burrville Elementary at 10:15am. I was instructed to go to the auditorium by the secretary. When I got their around 10:22am. The 5th grade class was taking their final bow as the Play was over.

27.    When I returned home at 11:00am, I informed my Mother that the Play was over. She could not believe what I was telling her as she got a confirmation that it was at 1:00pm. She immediately called Burrville Elementary to speak to Mr. Rutledge and the secretary told her that he is in a meeting and will return her call. Mr. Rutledge never returned her call.

6

28.    After writing my letter to Ms. Clark on January 6, 2005, complaining that the faculty and staff at Burrville Elementary have been discriminating against my child. Me and my family (mother included along with additional members of my family who made up the party of 4) have been retaliated against by Mr. Rutledge by preventing my family and I to see my son in the 5th grader's play. My son and I have been retaliated against by Ms. Clark, Ms. Ajaero, and Mr. Rutledge by avoiding me and not responding to my very serious allegations for which I stand by 100 percent.

30.    During the month of March 2005, I received a notice from my child's teacher Ms. Clark notifying me that there will be a parents teacher's conference for the second advisory and that I must state what time I will be meeting with her. I wrote back to Ms. Clark on the same notice I received from her stating: "I have made some very serious claims against the faculty and staff at Burrville Elementary for which I stand by 100 percent. I demand to speak with you, Mr. Rutledge and Ms. Ajaero." Ms. Clark, Mr. Rutledge and Ms. Ajaero, ignored my demand.

31.    During the first week of May 2005, I received another notice from Ms. Clark stating that there will be a parent teacher's conference and that I must state what time I will be meeting with her.

32.    On Monday, May 9, 2005 I wrote Ms. Clark a letter requesting that she send my child's report card home as I am filing a discrimination complaint with The Office of Civil Rights, against the faculty and staff at Burrville Elementary. Later that day, my child came home with a package for me from Ms. Ajaero, requesting that I appear at their Multidisciplinary Team Meeting on May 25 or May 27, 2005.

33.    Since claiming that my child is being discriminated against by the faculty and staff at Burrville Elementary. My child, my family and I have been retaliated against by Mr. Rutledge. I have physical evidence to prove that Mr. Rutledge falsified document(s) by signing his name on my child's IEP stating that he was an IEP Team Participant and that he agreed to the contents of the IEP. Mr. Rutledge, Ms. Clark and Ms. Ajaero have refused to meet with me after I informed them in writing on numerous occasions to meet with them. I have physical evidence to show that Ms. Clark forward copies of my letters to both Ms. Ajaero and Mr. Rutledge.

34.    On June 7, 2005 I filed a discrimination complaint with the U.S. Department of Education Office of Civil Rights OCR Complaint # 11-05-1214 against DCPS on behalf of my son Malcolm Henneghan.

7

35. In the discrimination complaint filed with the U.S. Department of Education Office of Civil Rights, I stated that DCPS discriminated against my son Malcolm Henneghan based on his disability, Learning Disability (LD). Specifically, I alleged that:

1. DCPS failed to provide my son Malcolm Henneghan a free and appropriate public education (FAPE) by failing to implement Malcolm Henneghan Individual Education Program (IEP) at Burrville Elementary School (School) during the 2004-2005 school year.

2. DCPS retaliated against Godfrey Henneghan (parent) because Mr. Henneghan advocated on behalf of Malcolm Henneghan (son), by changing the time of a School play in January 2005, which denied you and your family the opportunity to attend.

3. The Student was removed from the special education program at the School sometime prior to August 2004.

4. The School's Principal falsified the Student's IEP from August 26, 2004, by signing and stating that he was a participating member of the Multidisciplinary Team and agreed to the recommendation contained in the IEP, even though the Principal was not in attendance to participate in the Multidisciplinary Team Meeting where all team members introduced themselves and signed the IEP as a contract agreeing to the contents contained in Malcolm Henneghan's IEP.

36. On January 27, 2006, The U.S. Department of Education Office of Civil Rights and Dr. Clifford Janey, Superintendent, of District of Columbia Public Schools entered a Commitment To Resolve Agreement for Complaint No. 11-05-1214 stating:

37. "In order to resolve concerns identified by the District of Columbia Office of the Office for Civil Rights (OCR) regarding the provision of a free appropriate public education to the Student, who attends Burrville Elementary School (School) within the District of Columbia Public Schools (DCPS), DCPS enters into the following Commitment to Resolve (CTR). DCPS voluntarily commits to implement the following actions. This agreement neither constitutes any finding by OCR that DCPS has discriminated or otherwise engaged in any wrongdoing, nor any admission by DCPS of any discrimination or wrongdoing. Implementation of the following commitments will resolve OCR's concerns related to the complaint.

8

38.     Commitments: DCPS shall evaluate the Student to determine how much specialized instruction in reading, math, and written expression the Student needs to compensate for the services not provided during the 2004-2005 school year, and shall provide this specialized instruction, as well as a minimum of 16 hours of speech language therapy, in addition to those services already being provided to the Student. The services may be provided during the regular school year and/or through an extended school year program.

39.     DCPS shall ensure the Student receives the specialized instruction and speech language therapy provided in the Student's Individualized Education Program (IEP) for the 2005-2006 and 2006-2007 school years. DCPS will log all hour of specialized instruction and speech language therapy that the Student receives on a daily basis and maintain such records.

40.     Further, DCPS will provide documentation and a narrative of the process used to determine whether 16 hours of speech language therapy is sufficient to compensate for the services not provided or whether additional hours are needed, and a plan as to how DCPS will provide this therapy.

41.     Reporting:  Withing 30 calendar days of signing this CTR, DCPS shall provide the name, title, and telephone number of the person(s) designated to provide specialized instruction and speech language therapy to the Student.

42.     Within 30 calendar days of signing this CTR, DCPS will provide OCR documentation and a narrative of the process used to determine how much specialized instruction the Student needs to compensate for the services not provided during the 2004-2005 school year. These plans are to provide start and finish times; the length of time that specialized instruction and speech language therapy will be provided to the Student; and information on how any missed time will be made up and by whom. This instructions is to be completed by September 1, 2006.

43.     On April 15, 2006, July 15, 2006, October 15, 2006, January 16, 2007, April 15, 2007, and July 15, 2007, DCPS will provide OCR with signed and dated logs of the specialized instruction and speech language therapy provided the Student during the three-month period prior to the submission of the logs, evidencing the provision of both the services called for in the Student'' current IEP and those services due the Student from the 2004-2005 school year.

44.     From the date of the CTR until July 15, 2007, DCPS will provide OCR with copies of all IEPs developed for the Student, along with any addenda.

9

45. On December 7, 2006, I received a telephone call from Ms. Harris-Wafula, Special Education Coordinator, at Kelly Miller Middle School informing me that she is the Special Education Coordinator for Kelly Miller and to talk to me about my child's IEP. I immediately informed Ms. Harris-Wafula that I have filed a Discrimination and Retaliation complaint with The U.S. Department of Education Office of Civil Rights against DCPS for discriminating against my learning disable child by failing to provide my child a free and appropriate public education (FAPE) by failing to implement my child's IEP at DCPS during 2004-2005 school year.

46. I also, mentioned that as a result of my filing a discrimination complaint with the U.S. Dept. of Ed. Office of Civil Rights (OCR). OCR and DCPS has entered into a Commitment to Resolve (Agreement) to take the following actions:

A. Evaluate the Student (Malcolm Henneghan) to determine how much specialized instruction in reading, math, and written expression the Student (Malcolm Henneghan) needs to compensate for the services **not provided** during the **2004-2005** school year, and provide this specialized instruction, as well as a minimum of 16 hours of speech/language therapy

B. Ensure that the Student (Malcolm Henneghan) receives the specialized instruction and speech/language therapy provided in the Student's (Malcolm Henneghan) IEP for the 2005-2006 and 2006-2007 school years; and

C. Provide documentation and a narrative of the process used to determine whether 16 hours of speech/language therapy is sufficient to compensate for the services **not provided** and a plan as to how to provide this therapy.

47. As of this date, DCPS has not complied with my child's IEP nor have they honored the Commitment to Resolve (Agreement)

**10**

48.    Since my child started the 2006-2007 school year at DCPS, DCPS has failed to provide and or comply with my child's IEP.

49.    Please note on Friday December 1, 2006 my child met his Speech Therapist for the first time a teacher by the name of Ms. Taylor.

50.    As of this date December 7, 2006, I have not received any type of Special Ed. report card or status report from Kelly Miller (DCPS) showing the Special Ed. classes or progress made in Special Ed. by my child.

51.    On Dec. 1, 2006, I agreed to meet with Ms. Harris-Wafula on Wednesday December 6, 2006 at 10:00 in her office regarding OCR's findings and DCPS Commitment to Resolve Agreement. This was the only meeting that I agreed to attend. At no time during our telephone conversation on Dec. 1, 2006 I agreed to attend a Multidisciplinary Team (MDT) meeting. I informed Ms. Harris-Wafula during our telephone conversation that I will not take part in any type of MDT meeting until I am assured that DCPS is complying with my child's IEP and complying with OCR and DCPS Commitment To Resolve Agreement. You assured me that we'd meet on Wednesday December 6, 2006 to discuss my concerns. You also mention that you will send a confirmation notice home to confirm the time and the date of said meeting.

52.    At the end of the school day on Dec. 1, 2006, my child gave me a letter from you title "CONFIRMATION OF MEETING NOTICE". The notice stated that a multidisciplinary team (MDT) meeting is scheduled to discuss the status of my child's educational needs.

53.    I did not agree to attend a (MDT) meeting. I made Ms. Harris-Wafula aware that I will not attend a (MDT) meeting until my concerns are resolved. Even-though I made her aware that I would not attend a (MDT) meeting, she disregarded my concerns and arranged the (MDT) meeting for Wednesday December 6, 2006 at 10:00 am.

54.    Please note for the record that I received a Confirmation Of Meeting Notice to attend a multidisciplinary team (MDT) meeting from DCPS without any safeguards provided such as The Procedural Manual for Parents.

55.    Also, on the Confirmation of Meeting Notice under the sub title **The purpose of this meeting is to** there is a new purpose checked titled: [discuss Personal Health Information (PHI)] This purpose was never listed or discussed on any previous documents I received from DCPS. DCPS inserted this action without providing any reasons or definitions and there is no record of this action on any previous documents including MDT documents.

56.    DCPS is in direct violation of Title VII of the Civil Rights Act of 1964, including Section 504 of the Rehabilitation Act of 1973 which prohibits discrimination on the basis of disability. Furthermore, after filing a discrimination complaint with OCR to no avail. I have decided to file a civil action against DCPS for discriminating against my learning disabled child. It is my hope that a jury of my peers will resolve the unlawful action by DCPS. Until then, I will not participate in any DCPS Multidisciplinary

57.    On September 19, 2007, I received a Multidisciplinary Team Meeting Notice from Mr. Mike Revell, Special Education Coordinator at Kelly Miller Middle School . Please note that the Multidisciplinary Team Meeting Notice was mailed to an address that I do not reside 5906 Clay Street N.E., Washington, DC 20019. My address is 5814 Clay Street N.E., Washington D.C. 20019. Additionally, the Multidisciplinary Team Meeting Notice was dated September 12, 2007. Also, on the Multidisciplinary Team Meeting Notice dated September 12, 2007, there is a section on that notice that says "Please check ONE date for confirmation, SIGN and return this form to the school by September 12, 2007. Last but not least, the Multidisciplinary Team Meeting Notice was mailed on September 14, 2007.

58.    The Multidisciplinary Team Meeting Notice was created on September 12, 2007, mailed on September 14, 2007 and requested that I respond by September 12, 2007.

59.    With respect to Kelly Miller sending mail to the wrong address, please note that my address is **5814 Clay Street, N.E., Washington, D.C. 20019**. In September 2006, I registered my child at Kelly Miller with the above noted address. In addition to that, I had to prove residency with the above noted address (DC Public Schools burden of proof was enormous to say the least.) In saying that, I have never given Kelly Miller Middle school any home address other than the above noted address, which I registered my child under.

60.    I requested that any and all documentation mail to me by Kelly Miller Middle School be re-sent to the correct address.

61.    With regards to the Multidisciplinary Team Meeting Notice Letter of Invitation. Please note, on December 7, 2006, I have informed Ms. Harris-Wafula (last year Special Education Coordinator) that I have filed a Discrimination and Retaliation complaint with The U.S Department of Education Office of Civil Rights against DCPS for discrimination against my learning disable child by failing to provide my child a free and appropriate public education (FAPE) by failing to implement my child's IEP at DCPS during 2004 – 2005 school year.

**12**

62. I also, stated that as a result of my filing a discrimination complaint with the U.S. Dept. of Education Office of Civil Rights (OCR). OCR and DCPS has entered into a Commitment to Resolve (Agreement) to take the following action:

A    Evaluate the Student (Malcolm Henneghan) to determine how much specialized instruction in reading, math, and written expression the Student (Malcolm Henneghan) needs to compensate for the service **not provided** during the **2004-2005** school year, and provide this specialized instruction, as well as a minimum of 16 hours of speech/language therapy.

B.    Ensure that the Student (Malcolm Henneghan) receives the specialized instruction and speech/language therapy provided in the Student's (Malcolm Henneghan) IEP for the 2005-2006 and 2006-2007 school year and

C.    Provide documentation and narrative of the process used to determine whether 16 hours of speech/language therapy is sufficient to compensate for the services **not provided** and a plan as to how to provide this therapy.

63. As of this date September 23, 2007, DCPS has not complied with my child's IEP nor have they honored the Commitment to Resolve (Agreement).

64. As a result of DCPS gross negligence my child continues to be denied a free and appropriate education (FAPE).

65. In closing, **I will not agree to participate in the Multidisciplinary Team Meeting with a school system that discriminates against the learning disable.**

66. I will agree however, to have my child tested and evaluated by entities outside of DCPS to obtain a current IEP.

67. I will **not** agree to having my learning disable child school year extended due to the gross negligence caused by DCPS. My child is the victim of service denied by DCPS.

68. On September 27, 2007, I wrote a letter to Ms. Sheena F. Tuckson, Principal, Kelly Miller Middle School regarding Kelly Miller & DCPS Retaliation for Me Filing A Discrimination Complaint Against DCPS with the U.S. Department of Education Office of Civil Rights.

69. My letter was regarding a notice I received from Ms Tuckson, Principal, yesterday September 26, 2007. The Notice stated that **"We recently tried to get in touch with you and were unsuccessful. We were faced with one or more of the problems listed below"**

a.    **Telephone disconnected**
b.    **Telephone number unlisted**
c.    **Wrong telephone number**
d.    **No work number listed**
e.    **Never worded at number listed**
f.    **Wrong address, letter returned to sender**
g.    **Letter returned, apartment number not listed**

70.    Your notice further stated **"District of Columbia Public Schools require that
school official have available at *all times* correct addresses and telephone numbers, in
which they can contact parents.**

71.    Ms. Tuckson notice also stated **"It is urgent that you provide to the school
official the following updated information required by the District of Columbia Public
Schools."**

A.    **Complete Enrollment Form**
B.    **Proof of Residency**

72.    The last paragraph in Ms. Tuckson, Principal, Notice to me stated " We appreciate
your cooperation in providing Kelly Miller Middle School Middle school officials with the
correct information requested.  We need this information within the **next two** days after you
receive this letter, otherwise, we are obligated to contact Child Protection Services and report
child neglect.

73.    Since my child has been enrolled in DCPS from pre-school, second grade, third
grade, fourth grade, fifth grade, six grade, seventh grade.  My address has been 5814 Clay Street
N.E., Washington D.C. 20019.  My telephone number has always been 202-398-2484.

74.    Every School year my child attended DCPS from pre-school up until now.  Proof
of Residency was required.  I have never registered my child under any other address at DCPS
other than 5814 Clay Street, N.E., Washington, D.C. 20019.

75.    At the beginning of each school year since pre-school up until seventh grade.  I
have shown Proof of Residency under the address 5814 Clay Street N.E. Washington D.C.
20019.  Any and every form I ever completed at DCPS which required an address for me and my
child has always been 5814 Clay Street, N.E., Washington, D.C. 20019.  My home telephone
number has never changed from 202-398-2484 since my child has been enrolled at DCPS.

76.    In 2006, I filed a discrimination and retaliation complaint with the U.S. Education Dept. Office of Civil Rights against DCPS using my home address which is 5814 Clay Street N.E. Washington, D.C. 20019.

77.    I have never received any data/information regarding my child that was mailed to my home address.  I have never received and documents (report cards, or any information regarding Special Education) that was mailed to my home address, which is 5814 Clay Street N.E. Washington D.C.

78.    As a result of my filing a discrimination and retaliation complaint with the U.S. Education Dept. Office of Civil Rights.  DCPS and the U.S. Education Dept. Office of Civil Rights has entered into a Commitment to Resolve (Agreement) to take the following action:

1.    Evaluate the Student (Malcolm Henneghan) to determine how much specialized instruction in reading, math, and written expression the Student (Malcolm Henneghan) needs to compensate for the service **not provided** during the **2004-2005** school year, and provide this specialized instruction, as well as a minimum of 16 hours of speech/language therapy.

2.    Ensure that the Student (Malcolm Henneghan) receives the specialized instruction and speech/language therapy provided in the Student's (Malcolm Henneghan) IEP for the 2005-2006 and 2006-2007 school year and

3.    Provide documentation and narrative of the process used to determine whether 16 hours of speech/language therapy is sufficient to compensate for the services **not provided** and a plan as to how to provide this therapy.

79.    As of this date September 27, 2007, DCPS has not complied with my child's IEP nor have they honored the Commitment to Resolve (Agreement).

80.    As a result of DCPS gross negligence my child continues to be denied a free and appropriate education (FAPE).

81.    Because of DCPS non-compliance with the Commitment to Resolve (Agreement) with the Office of Civil Rights and my complaints to the Special Education Coordinator and Principal at Kelly Miller Middle School, I now feel that I am being retaliated against by DCPS for filing a discrimination and retaliation complaint and because DCPS is not in compliance with the Commitment to Resolve (Agreement) with the U.S. Education Department Office of Civil Rights.

82.    In closing, I will be filing another complaint with the U.S. Education Dept. Office of Civil Rights for Retaliation by DCPS for filing a complaint with the Office of Civil Rights. DCPS in now threatening to take aggressive action against me an my child and by conspiring to make it look like I never lived at 5814 Clay Street N.E. Washington, D.C.

83.    I will be at Kelly Miller today before close of business to show Proof of Residency (my DC Drivers Permit and my DC Voters Registration Card which has the address of 5814 Clay Street N.E. Washington D.C. 20019. Please note that the enrollment process I will be undertaking at Kelly Miller today is less than 30 days after the new school year.

84.    On September 28, 2007, I received a telephone call from Kelly Miller Middle School informing me that my child has been pulled out of class and will be sent home because I have not yet proved proof of residency.

85.    I stated to the school secretary that I received a notice from the Principal, Ms. Tuckson yesterday and on Ms. Tuckson Notice she stated that I have two (2) days to provide proof of residency and today is September 28, 2007 (the morning of the second day), Ms. Tuckson, the school Principal was pulling my child out of class and sending him home. Ms. Tuckson, the school Principal, did not give me the allotted time stated on her notice to provide proof of residency (she gave me two days on the notice and was pulling my child out of class and sending him home the morning of the second day).

86.    Ms. Tuckson, the school Principal was retaliating against me for sending her a letter informing her that Kelly Miller is discriminating against my child by not complying with the Commitment to Resolve Agreement and informing her that Kelly Miller Middle school is attempting to make it look like the school has no known address and telephone number for me and that I am in some kind of neglect because Kelly Miller Middle school has been mailing documents such as report cards special education notices and other school announcements to an address where my child and I do not reside.

87.    By not responding to notices and announcements sent by mail and telephone makes it look like I am being non-responsive to my child concerns at Kelly Miller Middle School and to keep me out of the loop with regards to my child's special needs regarding services he is receiving with respect to his learning disabilities.

16

88.    As early as the beginning of the school year of 2004 up until now, DCPS has not complied with any of my child's IEP's. The faculty and staff at DCPS do not read or comply with IEP's with respect to my child.

89.    I have been documenting all of the issues regarding services my child needs for special education since he has been enrolled in DCPS. I have been complaining about services he has not been receiving from DCPS since 2003. I have been complaining in writing to DCPS that they have been discriminating against my learning disabled child since 2003 up until now.

### COUNT 1

### (Section 504 of the Rehabilitation Act of 1973)

90.    The Plaintiff incorporates by reference all previ9ous allegations.

91.    Section 504 of the Rehabilitation Act of 1973 ("Section 504") prohibits recipients of federal financial assistance from excluding qualified individuals with disabilities from participation in federally assisted programs or activities solely on the basis of the disability, 29 U.S.C. § 794a.

92.    A public entity is required to make reasonable modification in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7).

93.    Malcolm Henneghan is an "individual with a disability" in speech, reading, written expression and math which substantially limits one or more major life activities.

94.    Malcolm Henneghan is "otherwise qualified" to attend school at Kelly Miller Middle School in that he is of the age and grade level in which children without disabilities attend the school.

95.    The Defendant DCPS is a recipient of federal financial assistance.

96.    The Defendant DCPS has discriminated against Malcolm Henneghan solely by reason of his disability by excluding him from and denying him participation in a federally funded program.

97.    The Defendant DCPS has refused to modify its policies, practices, or procedures, thereby intentionally discriminating on the basis of disability.

98.    As a direct result of the Defendant DCPS actions, Malcolm Henneghan has been deprived of public educational services offered to children without disabilities. Malcolm

Henneghan has suffered, and is continuing to suffer, irreparable harm due to the deliberate, intentional, wanton, willful, and outrageous discriminatory actions of the Defendant DCPS.

99.     As a direct result of the Defendant DCPS actions, the Plaintiff son Malcolm Henneghan has suffered embarrassment, humiliation, emotional distress, and other injuries and has incurred actual damages in an undetermined amount.

## COUNT II

### (Title II of the Americans with Disabilities Act)

100.     The Plaintiff incorporates by reference all previous allegations.

101.     Title II of the ADA governing state and local governmental entities protects persons from discrimination on the basis of disability by public entities. 42 U.S.C. §§ 12131-12165.

102.     Title II of the ADA defines a public entity in pertinent part as any state or local government, department, agency, special purpose district, or other instrumentality of a State or local government. 42 U.S.C. § 12131(1).

103.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity or be subject to discrimination by any such entity." 42 U.S.C. § 12132.

104.     Title II of the ADA's implementing regulations require that a "public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with a disability."28 C.F.R. § 35.130(d).

105.     Title II of the ADA's implementing regulations affirmatively require public entities to modify their practices, policies, and procedures as necessary to avoid discriminating against individuals with disabilities. 28 C.F.R. § 35.130(b)(7).

106.     The Defendant DCPS is a political subdivision of the state and is subject to Title II of the ADA.

107.     The Defendant DCPS has intentionally discriminated against Plaintiff son Malcolm Henneghan by refusing to modify its policies to allow him to participate in and benefit from the services that it provides to persons without disabilities.

108.    The Defendant DCPS has intentionally discriminated against Plaintiff son
Malcolm Henneghan by refusing to administer services, programs, and activities in the most
integrated setting appropriate to the needs of a qualified individual with a disability.

109.    As a direct result of the Defendant DCPS actions, the Plaintiff son Malcolm
Henneghan has been deprived of the public educational services offered to children without
disabilities in the most integrated setting appropriate to his needs.  The Plaintiff has suffered and
is continuing to suffer, irreparable harm due to the deliberate, intentional, wanton, willful, and
outrageous discriminatory actions of the Defendant.

110.    As s direct result of the Defendants DCPS actions, the Plaintiff son Malcolm
Henneghan has suffered embarrassment, humiliation, emotional distress, and other injuries and
has incurred actual damages in an undetermined amount.

### COUNT III

#### (Declaratory Relief)

111.    The Plaintiff incorporates by reference all previous allegations.

112.    In light of the foregoing, the Plaintiff seeks a declaratory judgment pursuant to 28
U.S.C. §§ 2201 and 2202, stating that the Defendant's conduct as alleged above is illegal and
violates Malcolm Henneghan's federally guaranteed rights.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in hs favor and against the Defendant as follows:

A.    Declaring that the practices, actions, and omissions of the Defendant DCPS discriminate against children with disabilities and deny them the full and equal access that federal law requires;

B.    Awarding the Plaintiff damages pursuant to 29 U.S.C. § 794a and 42 U.S.C. § 12133 in an amount to be proven at trail;

C.    Awarding the Plaintiff his reasonable attorneys' fees and costs pursuant to 29 U.S.C. U.S.C. § 12205;

D.    Granting such other or additional relief as this Court may deem just and proper.


RESPECTFULLY SUBMITTED this 13th day of November 2007.

**Godfrey D. Henneghan**
**5814 Clay Street N.E.**
**Washington, D.C.  20019**
**Tel. No. 202-398-2484**
**Email Address:**  havemessage@gmail.com

**Pro Se Plaintiff**

20

L
07-2173
HHK

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

Godfrey D. Henneghan

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 11001
(EXCEPT IN U.S. PLAINTIFF CASES)

Pro Se (NP)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

## DEFENDANTS

DC Public Schools

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

Case: 1:07-cv-02173
Assigned To : Kennedy, Henry H.
Assign. Date : 12/03/2007
Description: Civil Rights-Non. Employ.

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

□ 1 U.S. Government Plaintiff

☑ 3 Federal Question (U.S. Government Not a Party)

□ 2 U.S. Government Defendant

□ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | □ 1 | □ 1 | Incorporated or Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### □ A. Antitrust
□ 410 Antitrust

### □ B. Personal Injury/Malpractice
□ 310 Airplane
□ 315 Airplane Product Liability
□ 320 Assault, Libel & Slander
□ 330 Federal Employers Liability
□ 340 Marine
□ 345 Marine Product Liability
□ 350 Motor Vehicle
□ 355 Motor Vehicle Product Liability
□ 360 Other Personal Injury
□ 362 Medical Malpractice
□ 365 Product Liability
□ 368 Asbestos Product Liability

### □ C. Administrative Agency Review
□ 151 Medicare Act

**Social Security:**
□ 861 HIA ((1395ff)
□ 862 Black Lung (923)
□ 863 DIWC/DIWW (405(g)
□ 864 SSID Title XVI
□ 865 RSI (405(g)

**Other Statutes**
□ 891 Agricultural Acts
□ 892 Economic Stabilization Act
□ 893 Environmental Matters
□ 894 Energy Allocation Act
□ 890 Other Statutory Actions (If Administrative Agency is Involved)

### □ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## □ E. General Civil (Other) OR □ F. Pro Se General Civil

**Real Property**
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

**Personal Property**
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

**Bankruptcy**
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
□ 535 Death Penalty
□ 540 Mandamus & Other
□ 550 Civil Rights
□ 555 Prison Condition

**Property Rights**
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

**Federal Tax Suits**
□ 870 Taxes (US plaintiff or defendant
□ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

**Other Statutes**
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.
□ 460 Deportation

□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
□ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

0

| ☐ G. *Habeas Corpus/ 2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(If Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student<br>Loans (excluding veterans) |
| ☐ K. *Labor/ERISA (non-employment)* | ☒ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☒ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting<br>Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ Multi district Litigation    ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 1983

**VII. REQUESTED IN COMPLAINT**

CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    **DEMAND $** O    Check YES only if demanded in complaint **JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ☐ YES ☒ NO    If yes, please complete related case form.

DATE 12/3/67    **SIGNATURE OF ATTORNEY OF RECORD** NCD

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

  **I.**    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

  **III.**    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

  **IV.**    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

  **VI.**    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

  **VIII.**    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.